UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. _____

CLAUDIA THOMPSON,

      Plaintiff,

v.

CARNIVAL CORPORATION, a Panamanian Corporation,
and TURISMO DE AVENTURA COSTA MAYA, S.A. de C.V.,
a Mexican Corporation,

      Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, CLAUDIA THOMPSON (hereinafter "Plaintiff"), sues Defendants, CARNIVAL CORPORATION ("CARNIVAL"), and TURISMO DE AVENTURA COSTA MAYA, S.A. de C.V. ("TURISMO") (collectively "Defendants"), and alleges as follows:

### PRELIMINARY & JURIDICTIONAL ALLEGATIONS

1. Plaintiff, CLAUDIA THOMPSON, is a citizen and resident of Hammond, Louisiana.

2. Defendant, CARNIVAL CORPORATION, is a foreign entity with its principal place of business in Miami-Dade County, Florida at 3655 Northwest 87th Avenue, Miami, Florida 33178.

3. Defendant, TURISMO DE AVENTURA COSTA MAYA, S.A. de C.V., is a foreign entity with its principal place of business in Cancun, Mexico, which caters to cruise ships and their passengers, including those of Defendant CARNIVAL, and upon information and belief is doing business in Florida and has substantial ties with the State of Florida.

4. The matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 USC §1332 and involves complete diversity of citizenship under 28 USC §1332.

EDUARDO J. HERNANDEZ, LLC

5. At all times material, Defendant CARNIVAL, personally or through an agent:

    a. Operated, conducted, engaged in, or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

    b. Was engaged in substantial and not isolated activity within this state;

    c. Purposefully availed itself of the benefits of conducting activities within Florida by purposefully directing its activities in and toward the state, thus obtaining the benefits and protections of the state's laws;

    d. Committed one or more of the acts stated in Fla. Stat. §§48.081, 48.181, or 48.193;

    e. Operated vessels in the waters of this state;

    f. Was engaged in the business of providing to the public and Plaintiff in particular, for compensation, vacation cruises aboard passenger cruise ships, including CARNIVAL BREEZE; and

    g. The acts of Defendant set out in the Complaint occurred in whole or in part in this county and/or state.

6. At all times material, Defendant TURISMO, personally or through an agent:

    a. Operated, conducted, engaged in, or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

    b. Contracted to be sued in this state for actions such as the present;

    c. Contracted to insure a person or risk located within this state at the time of contracting;

    d. Was engaged in substantial and not isolated activity within this state;

    e. Purposefully availed itself of the benefits of conducting activities within Florida by purposefully directing their activities in and toward the state, thus obtaining the benefits and protections of the state's laws;

    f. Consented to jurisdiction for this action before this Court pursuant to Fla.Stat. §§685.101(1), 685.102, and 48.193(1)(a)(9);

    g. Committed one or more of the acts stated in Fla.Stat. §§48.081, 48.181, or 48.193; and

    h. The acts of Defendant set out in the Complaint occurred in whole or in part in this county and/or state.

7. Defendants are subject to the jurisdiction of the courts of this state.

8. Defendant TURISMO has engaged in substantial and not isolated activity within this state under the specific jurisdiction section of Florida's Long-Arm Statute, Fla.Stat. §48.193(1)(a)(9) and Fla.Stat. §48.193(1)(a)(4), sufficient to bring it within the Court's jurisdiction, including, but not limited to:

    a. Defendant TURISMO has specifically consented to jurisdiction before this Court for this action as part of its ongoing and substantial arrangement with Defendant CARNIVAL for the benefit of and protection of Defendant CARNIVAL's passengers, including Plaintiff. In pertinent part, Fla.Stat. §685.101 provides:

The parties to any contract . . . in consideration of or relating to any obligation arising out of a transaction involving in the aggregate not less than $250,000, the equivalent thereof in any foreign currency, or services or tangible or intangible property, or both, of equivalent value . . . may, to the extent permitted under the United States Constitution, agree that the law of this state will govern such contract . . . the effect thereof and their rights and duties thereunder, in whole or in part, whether . . . such contract . . . bears any relation to this state.

Further, Fla.Stat. §685.102 creates a parallel grant of jurisdiction as follows:

Notwithstanding any law that limits the right of a person to maintain an action or proceeding, any person may, to the extent permitted under the United States Constitution, maintain in this state an action or proceeding against any person or other entity residing or located outside this state, if the action or proceeding arises out of or relates to any contract, agreement, or undertaking for which a choice of the law of this state, in whole or in part, has been made pursuant to [section] 685.101 and which contains a provision by which such person or other entity residing or located outside this state agrees to submit to the jurisdiction of the courts of this state.

Finally, Fla.Stat. §48.193(1)(a)(9) provides for the exercise of specific jurisdiction for:

Entering into a contract that complies with §685.102.

b.    Defendant TURISMO has specifically agreed to indemnify Defendant CARNIVAL for the claims made in the Complaint within the meaning of Fla.Stat. §48.193(1)(a)(4).

9.    At all times material, Defendant TURISMO entered into a contract with Defendant CARNIVAL concerning the subject excursion, which (a) contains a choice-of-law clause designating Florida law as the governing law; (b) contains a provision whereby Defendant TURISMO agrees to submit to the exclusive jurisdiction of the courts of Florida; (c) involves consideration of not less than $250,000 or relate to an obligation arising out of a transaction involving in the aggregate not less than $250,000; (d) does not violate the U.S. Constitution; and (e) has at least one party of the contract that is a resident of Florida or incorporated under the laws of Florida. Therefore, the contract between Defendant TURISMO and Defendant CARNIVAL meets all requirements to satisfy a finding of specific jurisdiction under Florida Statute §48.193(1)(a)(9).

10.     Further, Defendant TURISMO has engaged in substantial and not isolated activity within this state under the general jurisdiction section of Florida's Long-Arm Statute, Fla.Stat. §48.193(2), sufficient to bring it within the Court's jurisdiction, including, but not limited to: a) reaching out to cruise lines in Florida and establishing long term business partnerships with them; b) contracting with cruise lines in Florida to provide shore excursions to cruise line passengers; c) entering into partnerships and/or joint ventures with cruise lines in Florida to provide shore excursions to cruise line passengers; d) agreeing to insure and/or indemnify cruise lines in Florida; and 5) deriving substantial revenues from business with cruise lines in Florida. In the aggregate, Defendant TURISMO's collective, continuous, and systematic business activities in Florida are sufficient to satisfy a finding of general jurisdiction.

11.     At all times material, Defendant TURISMO's arrangements with the Florida-based cruise lines, including Defendant CARNIVAL, and the circumstances of this case are markedly different than those at issue in *Daimler AG v. Bauman*, 134 S.Ct. 746 (2014).  Here, unlike *Daimler*, Plaintiff has also sued a Florida-based cruise line, Defendant CARNIVAL, for injuries sustained while participating in an excursion operated by Defendant TURISMO, an agent of Defendant CARNIVAL. Further unlike *Daimler*, here, the principal, Defendant CARNIVAL, is "at home" in this jurisdiction inasmuch as Defendant CARNIVAL's principal place of business is in Miami, Florida. Thus, under *Daimler*, Defendant TURISMO is also deemed "at home" in this jurisdiction.

12.     Defendant TURISMO is and has been in the business of providing shore excursions, including an ATV Tour known as the "Off Road ATV & Beach Adventure" (a/k/a "ATV Jungle & Beach Adventure"), to Florida cruise line passengers, including Plaintiff.  A significant amount of Defendant TURISMO's business comes from Florida-based cruise lines, including Defendant CARNIVAL, and its passengers, including Plaintiff.  Upon information and

belief, the transaction(s) between Defendant CARNIVAL and Defendant TURISMO involves, in the aggregate, not less than $250,000.

13.     Each year, thousands of U.S. passengers travel to Mexico aboard the ships of Florida-based cruise lines, including Defendant CARNIVAL. Defendant TURISMO attracts these passengers, including Plaintiff, to its shore excursions, including the subject ATV Tour, by reaching out to Florida-based cruise lines, including Defendant CARNIVAL, establishing business partnerships with them, and entering into contracts with them. Upon information and belief, Defendant TURISMO is in a business partnership with Defendant CARNIVAL.

14.     In addition to Defendant CARNIVAL (based in Miami), the following cruise lines regularly call at Mexico and are believed to be partnered with Defendant TURISMO: Celebrity Cruises (based in Miami), Disney Cruises (based in Celebration, Florida), NCL (Bahamas) Ltd. (based in Miami) Oceania Cruises (based in Miami), Princess Cruises (based in Santa Clarita, California but owned by Miami-based Carnival), Regent Seven Seas Cruises (based in Miami), and Royal Caribbean Cruises Ltd. (based in Miami).

15.     Defendant TURISMO's ATV Tour  is advertised, promoted, and sold by Defendant CARNIVAL to U.S. passengers, including Plaintiff, for cruises originating and returning to ports in Florida.   Defendant CARNIVAL's website advertises, promotes, and offers the sale of Defendant TURISMO's shore excursion in Mexico as follows:

### Off Road ATV & Beach Adventure

4.6  (123)
Starting at
**$104.99** / Person

Costa Maya, Mexico
Moderate Activity Level
Minimum age 18 years
Snack only
3.5 hours

Add to cart

**Find a Cruise**

EDUARDO J. HERNANDEZ, LLC

Already booked a cruise?

**Look up your reservation**

# DETAILS

## DETAILS

Discover the natural beauty and ancient charm that exists in Costa Maya while driving your own all-terrain vehicle. Your group will be led deep into the jungle, through off-road paths and hidden trails. Afterwards, it's back to a private beach club for some well-deserved rest and relaxation.

**The Best Price Guarantee** Find a better price for any excursion we offer and we will refund you 110% of the price difference!*

**The Best Shore Excursions** We've hand selected the best local providers at every port of call so you can relax and focus on the fun.

**Peace of Mind** We take care of the details and wait for all the Carnival excursions to return before departing.

## NOTES

- A valid driver's license and closed toe shoes are required to participate.
- For security reasons, alcoholic beverages are served after the ATV portion of the tour.
- The minimum age to attend this tour is 18 years old; maximum age is 60 years old; maximum weight is 360 lbs.
- Guests who are pregnant, back/neck injuries, recent surgeries, history of seizures, vertigo, epilepsy, diabetes, heart or respiratory conditions, asthma or are on any form of blood pressure medication are not permitted to participate on the excursion.
- The off-road portion of the tour is very bumpy and uneven.
- A helmet and goggles must be worn at all times during the ATV ride.
- Due to the nature of the tour, previous driving experience is recommended.
- Food is available for purchase at the beach club with cash.
- Scheduling for the ATV portion of the tour may vary.
- Passengers may be transferred to the beach and once there informed about their specific time of departure.
- Departures will take place approximately every 90 minutes.

16. Defendant TURISMO receives the benefits of the advertising efforts of Florida-based cruise lines, including Defendant CARNIVAL. As discussed above, Defendant CARNIVAL's website advertises, promotes, and sells Defendant TURISMO's ATV Tour to passengers even before they board their cruise. Moreover, when passengers, including Plaintiff, boarded CARNIVAL BREEZE, Defendant CARNIVAL offered, recommended, and marketed Defendant TURISMO's ATV Tour in various places around the ship. For instance, Defendant CARNIVAL allowed passengers to book and pay for Defendant TURISMO's shore excursion in their cabin through the cabin's TV. There, Defendant CARNIVAL's passengers, including

Plaintiff, could review the menu of Defendant TURISMO's shore excursion, read about the excursion, see photographs/video of the excursion, and purchase the excursion. Alternatively, Defendant CARNIVAL allowed passengers, including Plaintiff, to book and pay for Defendant TURISMO's shore excursion at the ship's shore excursion desk. There, passengers could speak with Defendant CARNIVAL's crewmembers, trained by Defendant CARNIVAL, to answer questions and provide information about Defendant TURISMO's shore excursion and to assist passengers in purchasing the excursion.

17.     As such, one of the clear benefits to Defendant TURISMO is that when they enter into agreements with Florida-based cruise lines, like Defendant CARNIVAL, they receive the benefits of the cruise line's advertising efforts in Florida directed toward actual and potential customers in Florida. As a consequence, Defendant TURISMO very much availed itself of the benefits of doing business in Florida.

18.     In order to maintain existing cruise line business and garner new cruise line business, upon information and belief, Defendant TURISMO submits annual bids for contracts to Florida-based cruise lines, including Defendant CARNIVAL, it wants to continue doing business with. The bids are submitted to cruise line executives in Florida. The bids are sent via e-mail to the various cruise lines' shore excursion departments. Through these bids, Defendant TURISMO offers to Florida cruise lines its shore excursions, including the ATV Tour in Mexico. In the bids, Defendant TURISMO provides the Florida-based cruise lines, including Defendant CARNIVAL, information regarding each excursion, including: tour operator information, tour pricing, timing, accessibility, safety policies, licenses, permits and prior accidents and injuries that have occurred on its tours.

19.     Defendant TURISMO must submit these bids on forms created by the Florida-based cruise lines, including Defendant CARNIVAL, each year to cruise line offices in Florida, in order to renew existing agreements and/or obtain new business from the cruise line. Once

Defendant TURISMO submits these bids, the Florida cruise lines process the forms and determine (at their offices in Florida), whether or not to renew and/or expand its existing contract with Defendant TURISMO. By submitting bids and tour proposal templates to Florida-based cruise lines, including Defendant CARNIVAL, every year, Defendant TURISMO purposefully reached out to cruise lines in Florida to maintain (and increase) its revenues.

20.     Once Defendant TURISMO's bid is approved by a Florida-based cruise line, including Defendant CARNIVAL, a contract is entered into which governs the parties' dealings, including Defendant CARNIVAL's advertising, marketing, and sale of shore excursions and Defendant TURISMO's operations and performance of the shore excursion. Upon information and belief, these contracts, including the one in place at the time of the incident alleged herein, are consummated, in whole or in part, in Florida.

21.     As discussed above, these contracts, including the one in place between Defendants at the time of Plaintiff's incident, contain a consent to jurisdiction before this Court for this action by Defendant TURISMO and an agreement by Defendant TURISMO to defend and indemnify Defendant CARNIVAL in this action.

22.     The contracts between the Florida-based cruise lines, including Defendant CARNIVAL, and shore excursion operators, including Defendant TURISMO, typically include a "choice of law and consent to jurisdiction" section pursuant to which the shore excursion operators, including Defendant TURISMO, contractually agree to application of Florida law and to personal jurisdiction in Florida in connection with passenger lawsuits such as the present. Through these contracts, shore excursion operators, including Defendant TURISMO, agree to the exclusive jurisdiction of courts in Florida for all disputes and matters whatsoever arising from or related to the cruises booked by Defendant CARNIVAL's passengers, including Plaintiff, aboard Defendant CARNIVAL's ships. Thus, by agreeing to the jurisdiction of courts in Florida, Defendant TURISMO has purposefully availed themselves, and intended to submit themselves to

the jurisdiction of this Court.

23.     In addition, as part of its contractual obligations with Florida-based cruise lines, including Defendant CARNIVAL, shore excursion operators, including Defendant TURISMO, must procure and maintain insurance coverage, acceptable to Defendant CARNIVAL, for claims such as that involving Plaintiff herein.  The geographic coverage of these insurance policies includes Florida.  Moreover, as part of the contractual obligations, the Florida-based cruise lines, including Defendant CARNIVAL, must be named as additional assureds on the insurance policies procured and maintained by the shore excursion operators, including Defendant TURISMO.

24.     U.S. cruise line passengers, including Plaintiff, who purchase cruises and shore excursions from Florida-based cruise lines, including Defendant CARNIVAL, and embark and disembark cruises in Florida are intended third party beneficiaries under these insurance policies. These insurance policies are in furtherance of duties owed directly to passengers, including Plaintiff, by Defendant CARNIVAL.

25.     Typically, once a passenger, including Plaintiff, books Defendant TURISMO's shore excursion from Defendant CARNIVAL, pays for the excursion in full, and participates in the excursion, Defendant TURISMO transmits an invoice to Defendant CARNIVAL's accounts payable department, in Miami, Florida. These invoices are then processed and approved by the accounts payable department in Miami, Florida. Once processed and approved, the funds are remitted to Defendant TURISMO. This process is repeated after every shore excursion is completed (on each given cruise). Each month, Defendant TURISMO sends invoices and receives wire transfers processed by Defendant CARNIVAL and the other cruise lines in Florida.

26.     In totality, Defendant TURISMO's activities in Florida satisfy the due process requirements of "Specific Jurisdiction" under Florida's Long-Arm Statute, §48.193(1). *See Steffan v. Carnival Corp. and Chukka Caribbean Adventures Ltd.,* Case No. 16-Civ-25295-Altonaga/Goodman (S.D.Fla. Aug, 1, 2017) (foreign shore excursion operator subject to

jurisdiction in Florida based upon its consent to jurisdiction); *Lienemann v. Cruise Ship Excursions, Inc. and Carnival Corp.,* 349 F.Supp.3d 1269 (S.D.Fla. 2018) (foreign shore excursion operator subject to jurisdiction in Florida based upon its consent to jurisdiction)*; Kilma v. Carnival Corp.,* 2008 WL 4559231 (S.D.Fla. 2008).

27.     In totality, Defendant TURISMO's activities evince "a general course of business activity in the State [of Florida] for pecuniary benefit." *Stubbs v. Wyndham Mexico Resort and Crystal Palace Casino*, 447 F. 3d 1357, 1361 (11th Cir. 2006).  This is the type of continuous and systematic general business contact with Florida that satisfies the due process requirements of "General Jurisdiction" under Florida's Long-Arm Statute, §48.193(2).

## GENERAL ALLEGATIONS

28.     The causes of action asserted in this Complaint arise under the General Maritime Law of the United States.

29.     At all times material, DEFENDANT CARNIVAL owned, operated, managed, maintained, and/or controlled CARNIVAL BREEZE.

30.     At all times material, DEFENDANT CARNIVAL had exclusive custody and control of CARNIVAL BREEZE.

31.     On or about November 28, 2019, Plaintiff was a passenger aboard CARNIVAL BREEZE which was in navigable waters.

32.     At all times material, Defendant CARNIVAL and Defendant TURISMO, owned, operated, managed, maintained, franchised, and/or controlled the ATV Tour in Mexico known as the "Off Road ATV & Beach Adventure" (a/k/a "ATV Jungle & Beach Adventure").

33.     At all times material, Defendant CARNIVAL and Defendant TURISMO had exclusive custody and control of the ATV Tour in Mexico.

34.     On or about November 28, 2019, by virtue of the ATV Tour advertised, marketed, promoted, and sold by Defendant CARNIVAL on its website and aboard CARNIVAL BREEZE,

Plaintiff was a business invitee on Defendant TURISMO's ATV Tour in Mexico.

35.     At all times material, shore excursions available on cruises aboard CARNIVAL BREEZE were advertised to passengers, including Plaintiff, on Defendant CARNIVAL's website, in Defendant CARNIVAL's promotional materials, and aboard Defendant CARNIVAL's ships, including CARNIVAL BREEZE.

36.     At all times material, Defendant CARNIVAL offered passengers, including Plaintiff, aboard CARNIVAL BREEZE, the opportunity to go on various shore excursions during the subject cruise, including, but not limited to, Defendant TURISMO's ATV Tour in Mexico.

37.     At all times material, Defendant CARNIVAL had a shore excursion desk aboard CARNIVAL BREEZE for the purpose of providing Defendant CARNIVAL's passengers, including Plaintiff, recommendations regarding shore excursions and charging Defendant CARNIVAL passengers, including Plaintiff, for these shore excursions. Defendant CARNIVAL only recommended to passengers, including Plaintiff, those shore excursions operated by its agents, partners, and/or joint venturers, such as Defendant TURISMO.

38.     At all times material, Defendant CARNIVAL sold tickets for Defendant TURISMO's ATV Tour in Mexico to passengers, including Plaintiff, prior to the cruise and also once aboard CARNIVAL BREEZE during the subject cruise.

39.     At all times material, Defendant CARNIVAL did not provide any information to Plaintiff with respect to the name, address, owner and/or operator of the ATV Tour. Moreover, in its materials, Defendant CARNIVAL purposefully failed to disclose to Plaintiff that it was not the owner and operator of the ATV Tour. This was intentional and calculated to induce Plaintiff to purchase the shore excursion.

40.     On its website and while aboard CARNIVAL BREEZE, Defendant CARNIVAL recommended to passengers, including Plaintiff, the purchase of Defendant TURISMO's ATV

Tour.

41.     On November 28, 2019, as part of Plaintiff's cruise aboard CARNIVAL

BREEZE, Plaintiff had purchased Defendant TURISMO's ATV Tour in Mexico. This excursion

was arranged for, sponsored, advertised, promoted, recommended, operated, marketed, and/or sold

by Defendant CARNIVAL as part of the subject cruise.

42.     At all times material, Defendant TURISMO was the agent(s) and/or apparent

agent(s) of Defendant CARNIVAL, such that Defendant CARNIVAL is estopped from denying

that Defendant CARNIVAL was the principal for Defendant TURISMO, by virtue of the

following:

a.     Defendant CARNIVAL advertised and promoted the subject ATV Tour on its
       website; and/or
b.     Defendant CARNIVAL made all arrangements for the subject ATV Tour without
       disclosing to Plaintiff that the subject ATV Tour was being operated by another
       entity (and/or entities); and/or
c.     Defendant CARNIVAL marketed the subject ATV Tour using its company logo on
       its website, and/or in its brochures, and/or on its ship without disclosing to
       Plaintiff that the subject ATV Tour was being run by another entity (and/or
       entities); and/or
d.     Defendant CARNIVAL maintained a shore excursion desk on its ship whereby it
       offered, sold, provided information to, and answered questions of passengers
       about the subject ATV Tour without disclosing to Plaintiff that the subject ATV
       Tour was being run by another entity (and/or entities); and/or
e.     Defendant CARNIVAL recommended its passengers, including Plaintiff, to not
       purchase or participate in excursions, tours and/or activities that are not sold
       through Defendant CARNIVAL; and/or
f.     Until the point that Plaintiff actually participated in the subject ATV Tour, the
       Plaintiff's exclusive contact concerning the subject ATV Tour was with Defendant
       CARNIVAL; and/or
g.     The cost of the subject ATV Tour was determined by Defendant CARNIVAL;
       and/or
h.     Payment for the subject ATV Tour was charged to Plaintiff, and collected from
       Plaintiff, exclusively by Defendant CARNIVAL; and/or
i.     Plaintiff received a receipt exclusively from Defendant CARNIVAL for the
       purchase of the subject ATV Tour.

43.     At all times material, Plaintiff relied on the above, to her detriment, so as to believe

that Defendant TURISMO were the agent(s) and/or employee(s) of Defendant CARNIVAL, in

choosing the subject ATV Tour. At no time did Defendant CARNIVAL represent to Plaintiff in

particular, or the ship's passengers in general, in a meaningful way that Defendant TURISMO were not the agent(s) and/or employee(s) of Defendant CARNIVAL.

44.    At all times material, Defendant CARNIVAL was the owner or co-owner of the subject ATV Tour. At all times material hereto, Defendant CARNIVAL was responsible for, and liable for, the actions of Defendant TURISMO with respect to the subject ATV Tour.

45.    In the alternative, at all times material hereto, a partnership and/or joint venture existed between Defendant TURISMO and Defendant CARNIVAL by virtue of the following, whereby Defendant CARNIVAL and Defendant TURISMO, were jointly and severally responsible for the negligence of each other as partners of the partnership and/or joint venture:

   a.   Defendant CARNIVAL and Defendant TURISMO entered into an agreement whereby Defendant CARNIVAL made all arrangements for Plaintiff, on behalf of the partnership with Defendant TURISMO for the subject ATV Tour operated by Defendant TURISMO; and/or
   b.   Defendant CARNIVAL marketed on Defendant CARNIVAL's website, and/or in its brochures, and/or on its ship, on behalf of the partnership with Defendant TURISMO the subject ATV Tour operated by Defendant TURISMO; and/or
   c.   Defendant CARNIVAL maintained an excursion desk on its ship whereby it offered, sold, provided information to, and answered questions of passengers, on behalf of the partnership with Defendant TURISMO about the subject ATV Tour being run by Defendant TURISMO; and/or
   d.   Defendant CARNIVAL determined the cost for the subject ATV Tour operated by Defendant TURISMO; and/or
   e.   Defendant CARNIVAL collected the payment charged for the subject ATV Tour operated by Defendant TURISMO; and/or
   f.   Defendant CARNIVAL paid Defendant TURISMO, a portion of the sales of tickets for the subject ATV Tour after the subject ATV Tour tickets were sold; and/or
   g.   Defendant CARNIVAL shared profits and losses with Defendant TURISMO for the subject ATV Tour.

46.    At all times material, Defendant CARNIVAL was an agent for Defendant TURISMO in Florida and the United States.

47.    At all times material, Defendant CARNIVAL was a partner in the subject ATV Tour.

48.    At all times material, DEFENDANT CARNIVAL operated and/or supervised the subject ATV Tour.

49.     At all times material, Defendant TURISMO owned and operated the subject ATV Tour.  Defendant TURISMO was involved in providing the subject ATV Tour to Plaintiff.  At all times material hereto, Defendant TURISMO was the agent(s), apparent agent(s), joint venturer(s), servant(s), and/or employee(s) of Defendant CARNIVAL and at all times acted within the course and scope of its employment, agency, apparent agency, joint venture or service.

50.     When promoting, recommending, and selling the excursion, Defendant CARNIVAL never disclosed to its passengers, including Plaintiff, the true physical challenge required and the dangers to be encountered during the excursion, nor did Defendant CARNIVAL disclose the fact that the trail used by Defendant TURISMO was perilous and fraught with hidden dangers.

51.     At all times material, Defendant CARNIVAL did not provide any meaningful restrictions or warnings to its passengers, including Plaintiff, regarding health or safety concerns for passengers considering the subject ATV Tour.

52.     At all times material, Plaintiff relied on Defendant CARNIVAL's representations concerning the level of activity and/or dangers of the subject ATV Tour and that there were no notable meaningful restrictions or warnings regarding safety concerns for passengers purchasing and participating in the subject ATV Tour.

53.     In fact, despite Defendant CARNIVAL's representations of safety to the Plaintiff, at all times material, upon information and belief, Defendant CARNIVAL was on notice of the hazardous conditions on the excursion.

54.     On the day in question, Plaintiff participated in Defendant TURISMO's ATV Tour in Mexico.

55.     Neither Defendant CARNIVAL nor Defendant TURISMO provided adequate warnings about the hazards attendant to the subject ATV Tour, particularly the hazardous terrain that Plaintiff would have to traverse while participating in ATV tour.

56.     Neither Defendant CARNIVAL nor Defendant TURISMO provided adequate or competent instruction or orientation to Plaintiff on how to operate the ATV, particularly on how to operate the ATV through hazardous mud holes which Plaintiff had no alternative but to traverse on the trail she was made to use.

57.     At all material times, the hazardous condition was hidden and concealed, thereby affording Plaintiff no warning of the existence of the hazard.

58.     Upon information and belief, Defendant CARNIVAL and Defendant TURISMO were on notice of prior incidents during the subject ATV Tour where cruise line passengers have injured themselves.

59.     On November 28, 2019, while Plaintiff was participating in the ATV Tour which was guided by agents/employees of Defendant CARNIVAL and/or Defendant TURISMO, Plaintiff was directed by the guides to a trail.  The trail, at various locations, had muddy areas, some of which included deeper mud holes.  While on this trail, Plaintiff approached one of these deeper mud holes, but was unable to steer around due to the confines of the trail she was told by Defendants to remain on.  As such, Plaintiff proceeded into and through the mud hole.  The impact of the ATV with the hidden bottom of the mud hole caused the ATV to come to a sudden and unexpected stop and caused Plaintiff to be thrown through the air and into a nearby tree.

60.     As a result of the violent impact with the tree, Plaintiff sustained a serious compound fracture of the left leg and was rendered unconscious.

61.     Plaintiff had to be transported off the trail on the back of an ATV to an area where she could be moved to an ambulance and transported for emergency medical care.

62.     Plaintiff was unable to continue on the cruise as her injuries required emergent medical care ashore in Mexico, first at a clinic and then at a hospital where she underwent two surgeries and remained hospitalized for approximately one week.  Thereafter, Plaintiff was flown back to the U.S. where she has necessitated continued medical care.

63.     All conditions precedent to the maintenance of this action have been performed, or, alternatively, have been waived.

## COUNT I - NEGLIGENCE AGAINST DEFENDANT CARNIVAL

Plaintiff re-alleges, adopts, and incorporates by reference the allegations in Paragraphs one (1) through sixty-three (63) as though fully alleged herein.

64.     At all times material, Defendant CARNIVAL owed Plaintiff a duty of reasonable care under the circumstances. *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 79 S.Ct. 406 (1959); *Everett v. Carnival Cruise Lines, Inc.,* 912 F.2d 1355 (11th Cir. 1990); *Keefe v. Bahama Cruise Line, Inc.,* 867 F.2d 1318 (11th Cir. 1989), *on remand,* 715 F.Supp. 1069 (M.D.Fla. 1989); *Witover v. Celebrity Cruises, Inc.,* 2016 WL 661065, *3 (S.D.Fla. 2016); *Lapidus v. NCL America LLC,* 924 F.Supp.2d 1352 (S.D.Fla. 2013). This duty extended shoreside and included not acting negligently and warning Plaintiff of dangers known or in the exercise of reasonable care knowable to Defendant CARNIVAL which existed ashore or on a shore excursion.

65.     On or about November 28, 2019, Defendant CARNIVAL, and/or their agents, servants, joint venturers, and/or employees breached their duty to provide Plaintiff with reasonable care under the circumstances.

66.     On or about November 28, 2019, Plaintiff was injured while participating in the ATV Tour due to the fault and/or negligence of Defendant CARNIVAL, and/or their agents, servants, joint venturers, and/or employees as follows:

a.     Failure to exercise reasonable care under the circumstances for Plaintiff's safety during her participation in the ATV Tour; and/or

b.     Failure to adequately warn Plaintiff of the dangers of participating in the subject ATV Tour; and/or

c.     Failure to provide adequate instruction or orientation to Plaintiff on how to operate the ATV, particularly on how to operate the ATV through hazardous mud holes which Plaintiff had no alternative but to traverse on the trail she was made to use; and/or

d.     Failure to provide adequate instruction or orientation to Plaintiff on how to traverse the trail she was made to use, particularly on how to cross hazardous mud holes which Plaintiff had no alternative but to traverse on the trail she was made to use; and/or

e.   Failure to warn Plaintiff of Defendant TURISMO's inability and/or unwillingness to ensure the safety of passengers during the subject ATV Tour and/or;

f.   Failure to provide Plaintiff with a reasonably safe, operational, and properly maintained ATV; and/or

g.   Failure to provide Plaintiff with reasonably competent and knowledgably guides during the ATV Tour; and/or

h.   Failure to promulgate and/or enforce adequate policies and procedures for passengers, including Plaintiff, to be provided with a reasonably safe ATV Tour, and/or

i.   Failure to have adequate risk management procedures in place designed to reduce the occurrence of the type of accident suffered by Plaintiff; and/or

j.   Failure to implement available safety standards designed to reduce and/or prevent the type of accident suffered by Plaintiff; and/or

k.   Failure to take steps as a result of prior similar incidents to reduce and/or prevent the type of accident suffered by Plaintiff. *See Bever, et al. v. Turismo de Aventura Costa Maya, SA. de C.V. and Celebrity Cruises Inc.,* Case No. 18-Civ-25239-Gayles (S.D.Fla. 2018).

67.   Defendant CARNIVAL created the foregoing conditions causing Plaintiff's accident. Alternatively, Defendant CARNIVAL knew of the foregoing conditions causing Plaintiff's accident and did not correct them, or the conditions existed for a sufficient length of time so that Defendants, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them.

68.   The conditions created and/or known to Defendant CARNIVAL occurred with sufficient regularity so as to be reasonably foreseeable to Defendant CARNIVAL. *See Bever, et al. v. Turismo de Aventura Costa Maya, SA. de C.V. and Celebrity Cruises Inc.,* Case No. 18-Civ-25239-Gayles (S.D.Fla. 2018).

69.   In addition, at all times material, as part of the duty of reasonable care, Defendant CARNIVAL owed Plaintiff a duty of reasonable care in the selection and retention of Defendant TURISMO as a provider of shore excursions for Defendant CARNIVAL's passengers. *Heyden v. Celebrity Cruises, Inc.,* 2013 U.S.Dist.Lexis 27647 (S.D.Fla. 2013); *McLaren v. Celebrity Cruises, Inc.,* 2012 U.S.Dist.Lexis 68321 (S.D.Fla. 2012).

70.   On or about November 28, 2019, Defendant CARNIVAL breached its duty of reasonable care in the selection and retention of Defendant TURISMO as a provider of shore

excursions for Defendant CARNIVAL's passengers, including Plaintiff.

71.    On or about November 28, 2019, Plaintiff was injured due to the fault and/or

negligence of Defendant CARNIVAL in the selection and retention of Defendant TURISMO as

follows:

a.    Defendant CARNIVAL failed to exercise reasonable care in the selection and retention of Defendant TURISMO; and/or

b.    Defendant CARNIVAL failed to exercise reasonable care in the vetting and investigation of Defendant TURISMO competence and fitness to provide the subject ATV Tour to Defendant CARNIVAL's passengers, including Plaintiff; and/or

c.    Defendant CARNIVAL failed to exercise reasonable care in the vetting and investigation of Defendant TURISMO's employees/agents' competence and fitness to instruct for and guide the subject ATV Tour; and/or

d.    Defendant TURISMO was incompetent or unfit to provide the subject ATV Tour to Defendant CARNIVAL's passengers, including Plaintiff; and/or

e.    Defendant CARNIVAL knew or in the exercise of reasonable care should have known of the incompetence or unfitness of Defendant TURISMO in the provision of the subject ATV Tour to Defendant CARNIVAL's passengers, including Plaintiff, *see Bever, et al. v. Turismo de Aventura Costa Maya, SA. de C.V. and Celebrity Cruises Inc.,* Case No. 18-Civ-25239-Gayles (S.D.Fla. 2018); and/or

f.    Defendant CARNIVAL knew or in the exercise of reasonable care should have known of the incompetence or unfitness of Defendant TURISMO's employees/crewmembers in the instruction and guidance of the subject ATV Tour, *see Bever, et al. v. Turismo de Aventura Costa Maya, SA. de C.V. and Celebrity Cruises Inc.,* Case No. 18-Civ-25239-Gayles (S.D.Fla. 2018);  and/or

g.    Defendant CARNIVAL knew or in the exercise of reasonable care should have known of prior similar incidents. *See Bever, et al. v. Turismo de Aventura Costa Maya, SA. de C.V. and Celebrity Cruises Inc.,* Case No. 18-Civ-25239-Gayles (S.D.Fla. 2018).

72.    As a direct and proximate result of the negligence of Defendant CARNIVAL and

the incompetence and unfitness of Defendant TURISMO, Plaintiff was injured about Plaintiff's

body and extremities; suffered physical pain, mental anguish, loss of enjoyment of life,

disability, disfigurement, scarring,  aggravation of previously existing conditions; incurred

medical expenses in the care and treatment of Plaintiff's injuries both past and future; and suffered

physical handicap. The injuries are permanent or continuing in nature, and Plaintiff will suffer

the losses and impairments in the future.  In addition, Plaintiff lost the benefit of Plaintiff's

vacation, cruise, and transportation costs.

WHEREFORE, Plaintiff demands judgment for all damages recoverable under the law against Defendant CARNIVAL and demands a trial by Jury.

### COUNT II – FAILURE TO WARN AGAINST DEFENDANT CARNIVAL

Plaintiff re-alleges, adopts, and incorporates by reference the allegations in Paragraphs one (1) through sixty-three (63) as though fully alleged herein.

73.     At all times material, Defendant CARNIVAL owed Plaintiff a duty of reasonable care under  the circumstances, which includes a duty to warn of hidden dangerous conditions known or, in the exercise of reasonable care, knowable to Defendant.  *Poole v. Carnival Corp.,* Case No. 14-20237-Cooke/Torres (S.D.Fla. Apr. 8, 2015); *Luby v. Carnival Cruise Lines, Inc.,* 633 F.Supp. 40 (S.D.Fla. 1986), *aff'd,* 808 F.2d 60 (11th Cir. 1986).

74.     On or about November 28, 2019, Defendant CARNIVAL, and/or its agents, employees, and/or servants breached its/their duty to Plaintiff by failing to warn Plaintiff of a hidden and dangerous condition known or reasonably knowable to Defendant CARNIVAL.

75.     On or about November 28, 2019, Plaintiff was injured due to the failure to warn on the part of Defendant CARNIVAL, and/or its agents, employees, and/or servants as follows:

   a.  Failure to warn Plaintiff of a dangerous condition, to wit: a dangerous trail with hidden hazards including, but not limited to dangerous mud holes; and/or
   b.  Failure to warn Plaintiff of a dangerous condition, to wit: the dangers and potential for injury from participation in the subject ATV Tour despite actual and/or constructive knowledge of the dangers and risk of injury from the same or similar shore excursion. *See Bever, et al. v.  Turismo de Aventura Costa Maya, SA. de C.V. and Celebrity Cruises Inc.,* Case No. 18-Civ-25239-Gayles (S.D.Fla. 2018).

76.     Defendant CARNIVAL's failure to warn was calculated and motivated solely by the risk that warning passengers, including Plaintiff, of the known or reasonably knowable risks of the subject ATV Tour would result in a loss of revenue from the sale of such shore excursions.

77.     As a direct and proximate result of the failure to warn of Defendant CARNIVAL, Plaintiff was injured about Plaintiff's body and  extremities;  suffered  physical  pain,  mental anguish, loss of enjoyment of life, disability, disfigurement, scarring,  aggravation of previously

existing conditions; incurred medical expenses in the care and treatment of Plaintiff's injuries both past and future; and suffered physical handicap. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

WHEREFORE, Plaintiff demands judgment for all damages recoverable under the law against Defendant CARNIVAL and demands a trial by Jury.

## COUNT III
## NEGLIGENT MISREPRESENTATION AGAINST DEFENDANT CARNIVAL

Plaintiff re-alleges, adopts, and incorporates by reference the allegations in Paragraphs one (1) through sixty-three (63) as though fully alleged herein.

78.	Defendant CARNIVAL in an effort to persuade and convince its passengers, including Plaintiff, to purchase its excursions, made representations in its literature, advertisements, promotional materials and onboard about the safety and security of the excursions which Defendant CARNIVAL describes as our "shore excursions" representing that the excursions are safe and operated with reliable and insured tour operators.

79.	As part of its efforts to persuade its passengers to purchase and partake in these excursions, Defendant CARNIVAL represented to its passengers, including Plaintiff, that the shore excursions it promotes and sells are safe.

80.	Defendant CARNIVAL made these representations with the purpose and intent that passengers, including Plaintiff, rely upon them.

81.	In fact, upon information and belief, these representations were misrepresentations of material fact.

82.	Plaintiffs relied on these material misrepresentations. But for these representations, Plaintiff would not have purchased or participated in the subject shore excursion.

83.	As a direct and proximate result of the negligent misrepresentation of Defendant CARNIVAL, Plaintiff was injured about Plaintiff's body and extremities; suffered physical pain,

mental anguish, loss of enjoyment of life, disability, disfigurement, scarring, aggravation of previously existing conditions; incurred medical expenses in the care and treatment of Plaintiff's injuries both past and future; and suffered physical handicap. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

WHEREFORE, Plaintiff demands judgment for all damages recoverable under the law against Defendant CARNIVAL and demands trial by Jury.

### COUNT IV - NEGLIGENCE AGAINST DEFENDANT TURISMO

Plaintiff re-alleges, adopts, and incorporates by reference the allegations in Paragraphs one (1) through sixty-three (63) as though fully alleged herein.

84.     At all times material, Defendant MEXICO owed Plaintiff a duty of reasonable care under the circumstances. *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 79 S.Ct. 406 (1959); *Everett v. Carnival Cruise Lines, Inc.,* 912 F.2d 1355 (11th Cir. 1990); *Keefe v. Bahama Cruise Line, Inc.,* 867 F.2d 1318 (11th Cir. 1989), *on remand,* 715 F.Supp. 1069 (M.D.Fla. 1989). This duty included warning Plaintiff of known or foreseeable dangers. *Keefe,* 867 F.2d at 1322; *Witover v. Celebrity Cruises, Inc.,* 2016 WL 661065, *3 (S.D.Fla. 2016); *Lapidus v. NCL America LLC,* 924 F.Supp.2d 1352 (S.D.Fla. 2013).

85.     On or about November 28, 2019, Defendant TURISMO, and/or their agents, servants, joint venturers, and/or employees breached their duty to provide Plaintiff with reasonable care under the circumstances.

86.     On or about November 28, 2019, Plaintiff was injured while participating in the ATV Tour due to the fault and/or negligence of Defendant TURISMO, and/or their agents, servants, joint venturers, and/or employees as follows:

    a.    Failure to exercise reasonable care under the circumstances for Plaintiff's safety during her participation in the ATV Tour; and/or

    b.    Failure to adequately warn Plaintiff of the dangers of participating in the subject ATV Tour; and/or

c.  Failure to provide adequate instruction or orientation to Plaintiff on how to operate the ATV, particularly on how to operate the ATV through hazardous mud holes which Plaintiff had no alternative but to traverse on the trail she was made to use; and/or

d.  Failure to provide adequate instruction or orientation to Plaintiff on how to traverse the trail she was made to use, particularly on how to cross hazardous mud holes which Plaintiff had no alternative but to traverse on the trail she was made to use; and/or

e.  Failure to provide Plaintiff with a reasonably safe, operational, and properly maintained ATV; and/or

f.  Failure to provide Plaintiff with reasonably competent and knowledgably guides during the ATV Tour; and/or

g.  Failure to equip the ATV Tour with necessary first aid equipment; and/or

h.  Failure properly train its employees/agents in the proper response to emergencies and/or passenger injuries; and/or

i.  Failure to promulgate and/or enforce adequate policies and procedures for passengers, including Plaintiff, to be provided with a reasonably safe ATV Tour, and/or

j.  Failure to have adequate risk management procedures in place designed to reduce the occurrence of the type of accident suffered by Plaintiff; and/or

k.  Failure to implement available safety standards designed to reduce and/or prevent the type of accident suffered by Plaintiff; and/or

l.  Failure to take steps as a result of prior similar incidents to reduce and/or prevent the type of accident suffered by Plaintiff. *See Bever, et al. v. Turismo de Aventura Costa Maya, SA. de C.V. and Celebrity Cruises Inc.,* Case No. 18-Civ-25239-Gayles (S.D.Fla. 2018).

87.  Defendant TURISMO created the foregoing conditions causing Plaintiff's accident. Alternatively, Defendant TURISMO knew of the foregoing conditions causing Plaintiff's accident and did not correct them, or the conditions existed for a sufficient length of time so that Defendant, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them.

88.  The conditions created and/or known to Defendant TURISMO occurred with suff5icient regularity so as to be reasonably foreseeable to Defendant TURISMO. *See Bever, et al. v. Turismo de Aventura Costa Maya, SA. de C.V. and Celebrity Cruises Inc.,* Case No. 18-Civ-25239-Gayles (S.D.Fla. 2018).

89.  As a direct and proximate result of the negligence of Defendant TURISMO, Plaintiff was injured about Plaintiff's body and extremities; suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, scarring, aggravation of previously

existing conditions; incurred medical expenses in the care and treatment of Plaintiff's injuries both past and future; and suffered physical handicap. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

WHEREFORE, Plaintiff demands judgment for all damages recoverable under the law against Defendant TURISMO and demands a trial by Jury.

### COUNT V - FAILURE TO WARN AGAINST DEFENDANT TURISMO

Plaintiff re-alleges, adopts, and incorporates by reference the allegations in Paragraphs one (1) through sixty-three (63) as though fully alleged herein.

90.   At all times material, Defendant TURISMO owed Plaintiff a duty of reasonable care under the circumstances, which includes a duty to warn of hidden dangerous conditions known or, in the exercise of reasonable care, knowable to Defendant. *Poole v. Carnival Corp.,* Case No. 14-20237-Cooke/Torres (S.D.Fla. Apr. 8, 2015); *Luby v. Carnival Cruise Lines, Inc.,* 633 F.Supp. 40 (S.D.Fla. 1986), *aff'd,* 808 F.2d 60 (11th Cir. 1986).

91.   On or about November 28, 2019, Defendant TURISMO, and/or its agents, employees, and/or servants breached its duty to Plaintiff by failing to warn Plaintiff of a hidden and dangerous condition known to Defendant TURISMO.

92.   On or about November 28, 2019, Plaintiff was injured due to the failure to warn on the part of Defendant TURISMO, and/or their agents, employees, and/or servants as follows:

   a. Failure to warn Plaintiff of a dangerous condition, to wit: a dangerous trail with hidden hazards including, but not limited to dangerous mud holes; and/or
   b. Failure to warn Plaintiff of a dangerous condition, to wit: the dangers and potential for injury from participation in the subject ATV Tour despite actual and/or constructive knowledge of the dangers and risk of injury from the same or similar shore excursions. *See Bever, et al. v. Turismo de Aventura Costa Maya, SA. de C.V. and Celebrity Cruises Inc.,* Case No. 18-Civ-25239-Gayles (S.D.Fla. 2018).

93.   Defendant TURISMO's failure to warn was motivated solely by the risk that warning passengers, including Plaintiff, of the known risks of the subject ATV Tour would result

in a loss of revenue from the sale of such shore excursions.

94.     As a direct and proximate result of intentional failure to warn of Defendant TURISMO, Plaintiff was injured about Plaintiff's body and extremities; suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, scarring, aggravation of previously existing conditions; incurred medical expenses in the care and treatment of Plaintiff's injuries both past and future; and suffered physical handicap. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

WHEREFORE, Plaintiff demands judgment for all damages recoverable under the law against Defendant TURISMO and demands a trial by Jury.

## COUNT VI – INTENTIONAL FAILURE TO WARN AGAINST DEFENDANT TURISMO

Plaintiff re-alleges, adopts, and incorporates by reference the allegations in Paragraphs one (1) through sixty-three (63) as though fully alleged herein.

90.     At all times material, Defendant TURISMO owed Plaintiff a duty of reasonable care under the circumstances, which includes a duty to warn of hidden dangerous conditions known or, in the exercise of reasonable care, knowable to Defendant. *Poole v. Carnival Corp.,* Case No. 14-20237-Cooke/Torres (S.D.Fla. Apr. 8, 2015); *Luby v. Carnival Cruise Lines, Inc.,* 633 F.Supp. 40 (S.D.Fla. 1986), *aff'd,* 808 F.2d 60 (11th Cir. 1986).

91.     On or about November 28, 2019, Defendant TURISMO, and/or its agents, employees, and/or servants breached its duty to Plaintiff by intentionally failing to warn Plaintiff of a hidden and dangerous condition known to Defendant TURISMO.

92.     On or about November 28, 2019, Plaintiff was injured due to the intentional failure to warn on the part of Defendant TURISMO, and/or their agents, employees, and/or servants as follows:

        a.  Intentional failure to warn Plaintiff of a dangerous condition, to wit: a dangerous trail with hidden hazards including, but not limited to dangerous mud holes; and/or

      b. Intentional failure to warn Plaintiff of a dangerous condition, to wit: the dangers and potential for injury from participation in the subject ATV Tour despite actual and/or constructive knowledge of the dangers and risk of injury from the same or similar shore excursions. *See Bever, et al. v.  Turismo de Aventura Costa Maya, SA. de C.V. and Celebrity Cruises Inc.,* Case No. 18-Civ-25239-Gayles (S.D.Fla. 2018).

93.    Defendant TURISMO's failure to warn was intentional, wanton, and willful. Further, this intentional failure to warn was motivated solely by the risk that warning passengers, including Plaintiff, of the known risks of the subject ATV Tour would result in a loss of revenue from the sale of such shore excursions.

94.    Under the circumstances of Defendant TURISMO being well aware, and on notice, of the true and actual dangers of the ATV Tour as that sold to Plaintiff as a result of prior serious injuries, claims, and/or lawsuits from the very same ATV Tour, *see Bever, et al. v.  Turismo de Aventura Costa Maya, SA. de C.V. and Celebrity Cruises Inc.,* Case No. 18-Civ-25239-Gayles (S.D.Fla. 2018), Defendant TURISMO's actions in not warning Plaintiff, verbally or in writing, of these known dangers were grossly negligent and reckless.

95.    As a direct and proximate result of intentional failure to warn of Defendant TURISMO, Plaintiff was injured about Plaintiff's body and  extremities;  suffered  physical  pain, mental anguish, loss of enjoyment of life, disability, disfigurement, scarring,  aggravation of previously existing conditions; incurred  medical expenses in the care and treatment of Plaintiff's injuries both past and future; and suffered physical handicap. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future.  In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

WHEREFORE, Plaintiff demands judgment for all damages, including punitive damages, recoverable under the law against Defendant TURISMO and demands a trial by Jury.

## COUNT VII - APPARENT AGENCY OR AGENCY BY ESTOPPEL
## AGAINST DEFENDANT CARNIVAL AND DEFENDANT TURISMO

Plaintiff re-alleges, adopts, and incorporates by reference the allegations in Paragraphs one

(1) through sixty-three (63) as though fully alleged herein.

96.   At all times material, Defendant TURISMO was the apparent agent(s) of Defendant CARNIVAL.

97.   At all times material, Defendant CARNIVAL is estopped from denying that Defendant TURISMO was its agent(s) or employee(s).

98.   At all times material, Defendant CARNIVAL made material manifestations which caused Plaintiff to believe that Defendant TURISMO had authority to act for the benefit of Defendant CARNIVAL. These manifestations included:

a.   Defendant CARNIVAL allowed its name to be utilized in connection with the advertising of Defendant TURISMO' ATV Tour; and/or

b.   Defendant CARNIVAL made all arrangements for the subject ATV Tour without effectively disclosing to Plaintiff that the subject ATV Tour was being run by another entity (and/or entities); and/or

c.   Defendant CARNIVAL marketed the subject ATV Tour using its company logo on its website and/or in its brochures and/or on its ship without meaningfully disclosing to Plaintiff that the subject ATV Tour was owned/operated and run by another entity (and/or entities); and/or

d.   Defendant CARNIVAL maintained an excursion desk on its ship whereby it offered, sold, provided information to, and answered questions of passengers about the subject ATV Tour without meaningfully disclosing to Plaintiff that the subject ATV Tour was being run by another entity (and/or entities); and/or

e.   Until the point that Plaintiff actually participated in the subject ATV Tour, Plaintiff's exclusive contact concerning the subject ATV Tour was with Defendant CARNIVAL; and/or

f.   Defendant CARNIVAL recommended to Plaintiff to not engage in shore excursions, tours, or activities that are not sold through Defendant CARNIVAL as Defendant CARNIVAL has no familiarity with other tours or their operations; and/or

g.   The fee for the excursion was charged to Plaintiff, and collected from the Plaintiff, exclusively by Defendant CARNIVAL, and/or

h.   Plaintiff received a ticket and receipt exclusively from Defendant CARNIVAL for the purchase of the subject ATV Tour.

99.   At all times material, under the circumstances described above, it was reasonable for Plaintiff to believe that Defendant TURISMO had authority to act for the benefit of Defendant CARNIVAL.

100.   At all times material, Plaintiff relied on the above, to her detriment, so as to believe that Defendant TURISMO, was the agent and/or employee of Defendant CARNIVAL, in choosing

the subject ATV Tour. Additionally, Defendant CARNIVAL's actions caused Plaintiff to believe that Defendant TURISMO, had authority to act on Defendant CARNIVAL's behalf.  Bur for Defendant CARNIVAL's material representations to Plaintiff, Plaintiff would not have purchased the subject ATV Tour.

101.    The foregoing acts of negligence of Defendant CARNIVAL and/or Defendant TURISMO were a direct and proximate cause of the Plaintiff's injuries and damages.

102.    As a direct and proximate result of the negligence of Defendants, Plaintiff was injured about Plaintiff's body and extremities; suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, scarring, aggravation of previously existing conditions; incurred medical expenses in the care and treatment of Plaintiff's injuries both past and future; and suffered physical handicap. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future.  In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

WHEREFORE, Plaintiff demands judgment for all damages recoverable under the law against Defendant CARNIVAL and Defendant TURISMO and demands trial by Jury.

## COUNT VIII - JOINT VENTURE BETWEEN DEFENDANT CARNIVAL AND DEFENDANT TURISMO

Plaintiff re-alleges, adopts, and incorporates by reference the allegations in Paragraphs one (1) through sixty-three (63) as though fully alleged herein.

103.    At all times material, Defendant CARNIVAL and Defendant TURISMO engaged in a joint venture to provide shore excursions to passengers aboard Defendant CARNIVAL's ship(s).

104.    At all times material, Defendant CARNIVAL and Defendant TURISMO entered into an agreement and/or agreements whereby Defendant CARNIVAL would advertise, market, and sell the subject ATV Tour to its passengers, including Plaintiff and Defendant TURISMO, would operate the subject ATV Tour.

105.    As its part of the joint venture, Defendant CARNIVAL arranged for, advertised, marketed, recommended, operated, sold, and/or collected money for the subject ATV Tour and the money was then shared between Defendant CARNIVAL and Defendant TURISMO.

106.    As its part of the joint venture, Defendant TURISMO, provided labor and/or operated the subject ATV Tour.

107.    Defendant CARNIVAL, on behalf of the joint venture, determined the fee and charged the fee to passengers, including Plaintiff, who participated in the subject ATV Tour. The earnings were split between Defendant CARNIVAL and Defendant TURISMO.

108.    At all times material, Defendant CARNIVAL and Defendant TURISMO, had joint and/or shared control over aspects of the joint venture. Defendant TURISMO had control over the day-to-day workings of the subject ATV Tour. Defendant CARNIVAL also had control over the day-to-day workings of the excursions (by way of unlimited example: the number of participants, the start time, the duration, the end time). Further, Defendant CARNIVAL also had control over the day-to-day workings of the excursions in that it required Defendant TURISMO, to exercise reasonable care in the operation of the subject ATV Tour. Defendant CARNIVAL had control over the arrangements, advertising, marketing, and sales of the subject ATV Tour.

109.    At all times material, Defendant CARNIVAL and Defendant TURISMO, shared a common purpose: to operate the subject ATV Tour for a profit.

110.    At all times material, Defendant CARNIVAL and Defendant TURISMO, had a joint proprietary and/or ownership interest in the subject ATV Tour. Defendant CARNIVAL had an interest in arranging, sponsoring, recommending, advertising, operating, and selling the subject ATV Tour as well as collecting money for such excursion, and Defendant TURISMO had a proprietary interest in the time and labor expended in operating the subject ATV Tour.

111.    At all times material, Defendant CARNIVAL and Defendant TURISMO, shared in the profits from the joint venture.

112. At all times material, Defendant CARNIVAL and Defendant TURISMO, shared in the losses from the joint venture.

113. Defendant CARNIVAL and Defendant TURISMO are jointly and severally liable for the negligence of the other as partners of the partnership and/or joint venture.

114. At all times material, Defendant CARNIVAL and Defendant TURISMO therefore:

a. Had an intention to create a joint venture; and/or
b. Had a joint proprietary interest in the subject matter of the venture; and/or
c. Had mutual control and/or joint control over the subject matter of the venture with respect to the provision of excursions to passengers aboard the ship; and/or
d. Had a right to share in the profits of the joint venture; and/or
e. Would share losses which may have been sustained.

115. As joint venturers, Defendant CARNIVAL and Defendant TURISMO are liable for each other's negligence. As a result, Defendant CARNIVAL is liable for the negligent conduct of Defendant TURISMO.

116. As a direct and proximate result of the negligence of Defendants, Plaintiff was injured about Plaintiff's body and extremities; suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, scarring, aggravation of previously existing conditions; incurred medical expenses in the care and treatment of Plaintiff's injuries both past and future; and suffered physical handicap. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

WHEREFORE, Plaintiff demands judgment for all damages recoverable under the law against Defendant CARNIVAL and Defendant TURISMO and demands trial by Jury.

## COUNT IX - THIRD PARTY BENEFICIARY

Plaintiff re-alleges, adopts, and incorporates by reference the allegations in Paragraphs one (1) through sixty-three (63) as though fully alleged herein.

117. At all times material, Defendant CARNIVAL advertised to passengers, including Plaintiff, that one of the reasons that its passengers, including Plaintiff, should book shore

excursions through Defendant CARNIVAL is because Defendant CARNIVAL contracts with professional and insured shore excursion operators.

118.    Defendant CARNIVAL and Defendant TURISMO, entered into a contract to provide  shore excursions for passengers on board Defendant CARNIVAL's ship(s) to which Plaintiff was not a party.

119.    The contract between Defendant CARNIVAL and Defendant TURISMO manifests the specific and express intent of the contracting parties that the contract primarily and directly benefit Defendant CARNIVAL's passengers, including Plaintiff, with legally enforceable rights as third parties under said contract by requiring, among other things, Defendant TURISMO, to maintain insurance, subject itself to the jurisdiction of Florida courts, and/or to exercise reasonable care in  the operation of the subject ATV Tour and relative to Defendant CARNIVAL's passengers, including Plaintiff.

120.    Moreover, the contract between Defendant CARNIVAL and Defendant TURISMO existed primarily and directly in furtherance of Defendant CARNIVAL's duty of reasonable care under  the circumstances its passengers, including Plaintiff.  *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 79 S.Ct. 406 (1959); *Everett v. Carnival Cruise Lines, Inc.,* 912 F.2d 1355 (11th Cir. 1990); *Keefe v. Bahama Cruise Line, Inc.,* 867 F.2d 1318 (11th Cir. 1989), *on remand,* 715 F.Supp. 1069 (M.D.Fla. 1989); *Witover v. Celebrity Cruises, Inc.,* 2016 WL 661065, *3 (S.D.Fla. 2016); *Lapidus v. NCL America LLC,* 924 F.Supp.2d 1352 (S.D.Fla. 2013).

121.    This contract was breached by both Defendant TURISMO and Defendant CARNIVAL as a result of acts and/or omissions that include, but are not limited to, the following:

    a.    Failure to provide a safe shore excursion as described above; and/or
    b.    Failure to properly vet the shore excursion operator; and/or
    c.    Failure to properly select the shore excursion operator; and/or
    d.    Failure to adequately monitor shore excursion operators so as to ensure that  the shore excursions were reasonably safe for passengers, including Plaintiff, which included making sure that the employees/guides on said excursion were competent and competently trained; and/or
    e.    Failure to properly supervise and oversee the shore excursion including Plaintiff

which included making sure that the employees/guides on said excursion were competent and competently trained and that there were appropriate safety warnings/signs/manuals/instructions for individuals on this excursion; and/or

f.      Failure to adequately warn Plaintiff of the dangers of participating in the subject ATV Tour; and/or

g.      Failure to adequately communicate physical limitations which are and/or should be associated with the subject ATV Tour; and/or

h.      Failure to ensure that the ATVs of Defendant TURISMO, including the ATV provided to Plaintiff, was fully operational and properly maintained; and or

i.      Failure to ensure that properly trained and supervised individuals operated/guided the subject ATV Tour as described above; and/or

j.      Operating a shore excursion which was not competently operated as described above; and/or

k.      Failure to provide a shore excursion with properly trained operators and personnel and making sure that said individuals were competent; and/or

l.      Failure to require the shore excursion operator to actively monitor passengers and Plaintiff during the subject ATV Tour; and/or

m.     Failure to adequately ascertain the shore excursion operator's ability and/or commitment to actively monitor passengers during the subject ATV Tour; and/or

n.      Failure to warn Plaintiff of the shore excursion operator's inability and/or unwillingness to actively monitor passengers during the subject ATV Tour; and/or

o.      Failure to warn Plaintiff of the dangers associated with the shore excursion not actively monitoring passengers during the subject ATV Tour; and/or

p.      Failure to ascertain the dangers, restrictions, and/or warnings regarding safety concerns for passengers purchasing and participating in the subject ATV Tour; and/or

q.      Failure to warn Plaintiff of the dangers, restrictions, and/or warnings regarding safety concerns for passengers purchasing and participating in the subject ATV Tour; and/or

r.      Failure to adequately ascertain the level of activity and/or danger the subject ATV Tour posed to passengers; and/or

s.      Failure to fairly and/or adequately communicate the level of activity and/or danger the subject ATV Tour posed to passengers; and/or

t.      Failure to provide adequate shore excursion guides to adequately protect Plaintiff and other passengers from dangers during the ATV Tour; and/or

u.      Failure to provide prompt, proper, or adequate first aid to the Plaintiff; and/or

v.      Failure to assist the Plaintiff to obtain adequate medical care on a timely basis.

122.    As a direct and proximate result of the breach of contract by Defendant CARNIVAL and Defendant TURISMO, Plaintiff was injured about Plaintiff's body and extremities; suffered physical pain, scarring, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of previously existing conditions; incurred medical expenses in the care and treatment of Plaintiff's injuries both past and future; and suffered physical handicap. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise,

and transportation costs.

WHEREFORE, Plaintiff demands judgment for all damages recoverable  under the law against Defendant CARNIVAL and Defendant TURISMO and demands trial by Jury.


DATED: May 28, 2020

Respectfully submitted,

**EDUARDO J. HERNANDEZ, LLC**
*Attorneys for Plaintiff*
10691 N. Kendall  Drive – Suite 109
Miami, Florida 33176
Telephone: (305) 567-0910
Facsimile: (786) 454-8905


**DAVID W. SINGER & ASSOC., PA**
*Attorneys for Plaintiff*
1011 South Federal Highway
Hollywood, Florida  33020
Telephone: (954) 920-1571
Facsimile: (954) 926-5746

By:     */s/ Eduardo J. Hernandez*
EDUARDO J. HERNANDEZ
Florida Bar No. 061451
ehernandez@ejh-law.com