## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 20-22217-Civ-WILLIAMS/TORRES

CLAUDIA THOMPSON,

      Plaintiff,

v.

CARNIVAL CORPORATION,
a Panamanian Corporation, and
TURISMO DE AVENTURA
COSTA MAYA, S.A., de C.V., a
Mexican Corporation,

      Defendants.

_____/

## REPORT AND RECOMMENDATION
## ON DEFENDANT'S MOTION TO DISMISS

This matter is before the Court on Carnival Corporation's ("Defendant" or "Carnival") motion to dismiss [D.E. 10] Claudia Thompson's ("Plaintiff") complaint. Plaintiff responded to Carnival's motion on July 20, 2020 [D.E. 13] to which Carnival replied on July 27, 2020. [D.E. 14]. Therefore, Carnival's motion is now ripe for disposition. After careful consideration of the motion, response, reply, relevant authority, and for the reasons discussed below, Carnival's motion to dismiss should be **GRANTED in part** and **DENIED in part**.[1]

---

[1]     On August 25, 2020, the Honorable Kathleen Williams referred Carnival's motion to the undersigned Magistrate Judge for disposition. [D.E. 16].

## *I. BACKGROUND*

Plaintiff filed this action on May 28, 2020 [D.E. 1] for injuries sustained while on a voyage of the *Carnival Breeze* and participating in a shore excursion on November 28, 2019.  Specifically, Plaintiff alleges that she purchased an ATV tour excursion in Mexico and that Carnival failed, amongst other things, to provide adequate warnings about the hazardous terrain.   While participating in the excursion, Plaintiff traversed the trails when she suddenly discovered that the terrain had mud holes.  Plaintiff was unable to steer around the mud holes because Carnival had instructed her to stay on the trail.  As a result, Plaintiff struck the mud holes and it caused her ATV to stop abruptly while throwing her through the air and into a nearby tree.  Plaintiff suffered a compound fracture to her left leg and the injury rendered her unconscious.

Crewmembers subsequently transported Plaintiff off the trail to an area where Plaintiff could be transported to an ambulance for emergency medical care.  Plaintiff travelled to a clinic and then a hospital where she underwent two surgeries and remained hospitalized for approximately one week.  Plaintiff then flew back to the United States and continued treatment for her injuries.  Because Carnival was negligent for the injuries sustained, Plaintiff filed a nine-count complaint to recover damages under federal maritime law.

## II. APPLICABLE PRINCIPLES AND LAW

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Conclusory statements, assertions or labels will not survive a 12(b)(6) motion to dismiss. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (setting forth the plausibility standard). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citation omitted). Additionally:

> Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in Plaintiff's favor, "but we are not required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Id.*; *see also Iqbal*, 556 U.S. at 681 (stating conclusory allegations are "not entitled to be assumed true").

*Sinaltrainal v. Coca-Cola*, 578 F.3d 1252, 1260 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449, 453 n.2, (2012). The Eleventh Circuit has endorsed "a 'two-pronged approach' in applying these

principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

### III. ANALYSIS

Carnival's motion seeks to dismiss several counts[2] in Plaintiff's complaint because they are either unclear, conclusory, constitute a shotgun style of pleading, or otherwise fail to state a claim for which relief can be granted. Plaintiff opposes Carnival's motion in its entirety and claims that she has presented sufficient facts to state a claim for each count alleged against Carnival. Before we turn to the merits, we must consider the principles of general maritime law to inform the analysis that follows.

### A.   *Principles of General Maritime Law*

Claims arising from alleged tort actions aboard ships sailing in navigable waters are governed by general maritime law. *See Keefe v. Bahama Cruise Line, Inc.*, 861 F.2d 1318, 1320 (11th Cir. 1989). Absent an applicable statute, general maritime law is "an amalgam of traditional common-law rules, modifications of those rules and newly created rules" drawn from state and federal sources. *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864-65 (1986).

---

[2]   Counts one (negligence), two (negligent failure to warn), three (negligent misrepresentation), seven (apparent agency and agency by estoppel), eight (joint venture), and nine (third party beneficiary) are directed at Carnival.

Maritime law may be supplemented by state law principles so long as application of the state law does not place "substantive admiralty principles" at risk. *In re Amtrak Sunset Ltd. Train Crash in Bayou Canot, Ala. on Sept. 22, 1993*, 121 F.3d 1421, 1426 (11th Cir. 1997); *see also Yamaha Motor Corp., U.S.A., v. Calhoun,* 516 U.S. 199, 210 (1996); *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 409 (1953).  Given these general maritime principles, we consider the parties' arguments in turn.

### B.   *Whether the Complaint is a Shotgun Pleading*

Carnival's leading argument is that Plaintiff's complaint should be dismissed because it constitutes an impermissible shotgun pleading.  A shotgun pleading is defined by "the failure to identify claims with sufficient clarity to enable the defendant to frame a responsive pleading." *Beckwith v. Bellsouth Telecomms., Inc.*, 146 F. App'x 368, 371 (11th Cir. 2005).  The Eleventh Circuit has found that "[t]he typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts . . . contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, L.L.C. v. Spear. Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002); *see also Ferrell v. Durbin*, 311 F. App'x 253, 259 (11th Cir. 2009).  Shotgun pleadings also are often characterized by factually unsupported claims and frequently fail to specify which defendant is responsible for each act alleged. *Beckwith*, 146 F. App'x at 372 ("The failure to identify claims with sufficient clarity to enable the defendant to frame a responsive pleading constitutes a shotgun pleading").  Shotgun pleadings make it virtually impossible to know which

allegations of fact are intended to support which claims for relief. *See Beckwith*, 146 F. App'x at 372; *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364,366 (11th Cir. 1996). As a result, shotgun pleadings impede the orderly, efficient, and economic disposition of disputes as well as the Court's overall ability to administer justice. *See Byrne v. Nezha*t, 261 F.3d 1075, 1128-31 (11th Cir. 2001), *abrogated on other grounds* by *Douglas Asphalt Co. v. QORE, Inc.*, 657 F.3d 1146 (11th Cir. 2011); *Ebrahimi v. Citv of Huntsville Bd. of Educ.*, 114 F.3d 162, 165 (11th Cir. 1997).

The Eleventh Circuit has instructed district courts to turn away shotgun pleadings as fatally defective. *See B.L.E. ex rel. Jefferson v. Georgia*, 335 F. App'x 962, 963 (11th Cir. 2009). To allow such a pleading would place an unjustifiable burden on the Court to take on the virtually impossible task of "ascertain[ing] what factual allegations correspond with each claim and which claim is directed at which defendant." *Beckwith*, 146 F. App'x at 373. Indeed, district courts are not required to "sift through the facts presented and decide for [itself] which were material to the particular cause of action asserted." *Strategic Income Fund*, 305 F.3d at 1296 n.9.

Carnival complains that each count incorporates sixty-three paragraphs of generic factual allegations and that this renders the complaint a shotgun pleading. While it is true that "[a] complaint incorporating a long list of general allegations into each claim for relief will . . . constitute a shotgun pleading if it fails to specify which facts are relevant to each claim," this generally justifies dismissal when a count incorporates all the general allegations of a preceding count. *Small v. Amgen,*

*Inc.*, 2 F. Supp. 3d 1292, 1296 (M.D. Fla. 2014) (citing *Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.,* 162 F.3d 1290, 1333 (11th Cir. 1998)); *see also Great Fla. Bank v. Countrywide Home Loans, Inc.*, 2011 WL 382588, at *2 (S.D. Fla. Feb. 3, 2011) ("[T]he basic form of Plaintiff's Third Amended Complaint is the same as those criticized by the Eleventh Circuit. Each cause of action 'realleges the foregoing allegations as if fully set forth herein,' such that the Second Cause of Action incorporates the First, the Third Cause of Action incorporates the First and Second Causes of Action, and so on, through the five causes of action.").

Yet, that is not what occurred here.  Plaintiff merely included a list of preliminary factual allegations that led to her injury and then set forth her theories of liability.  The complaint is therefore distinguishable from the four most common types of shotgun pleadings that justify dismissal:

> [W]e have identified four rough types or categories of shotgun pleadings. The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint.  The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action.  The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief.  Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.  The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.

*Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015) (footnotes omitted).

Carnival's stronger argument is that Plaintiff has commingled some of her claims within the same counts.  Carnival contends, for example, that Plaintiff has pled at least two theories of negligence (i.e. negligence and negligent selection/retention) in count one.  [D.E. 1 at ¶¶ 66, 71].  This argument is well taken because "[e]ach theory of negligence is a separate cause of action that must be asserted independently and with corresponding supporting factual allegations." *Tang v. NCL (Bahamas) Ltd.*, 2020 WL 3989125, at *2 (S.D. Fla. July 14, 2020) (citing *Givens v. Carnival Corp.*, 2020 WL 977934, at *2 (S.D. Fla. Feb. 28, 2020)). Thus, "it is impermissible for a plaintiff to plead allegations pertaining to distinct theories of liability into one claim." *Id*.; *see also* Fed. Civ. P. 10(b) (requiring a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.").

Count one falls victim to the third type of shotgun pleading because it includes several theories of negligence liability.  Count one starts, for instance, with allegations that Carnival failed to provide adequate instructions for participating in an ATV shore excursion [D.E. 1 at ¶ 66], and then abruptly switches to how Carnival failed to select and retain an excursion operator.  [D.E. 1 at ¶ 71]. Plaintiff tries to salvage these shifting allegations with an argument that everything falls under the umbrella of "negligence."  While that might be true in some respects, "a claim for negligence should not include allegations pertaining to

negligent hiring and retention." *Tang*, 2020 WL 3989125, at *2 (citing *Givens*, 2020 WL 977934, at *2).  The latter is an entirely separate theory of liability and it deserves a different set of factual allegations.  That is, although the failure to exercise reasonable care is a subset of both theories of liability, the failure to adequately advise Plaintiff of the shore excursion and the failure to select a shore operator do not share the same nucleus of operative facts.  Carnival's motion to dismiss count one should therefore be **GRANTED without prejudice** so that Plaintiff can separate her theories of negligence liability into different counts. *See, e.g.*, *Thanas v. Royal Caribbean Cruises Ltd.*, 2019 WL 1755510, at *2 (S.D. Fla. Apr. 19, 2019) ("Through a single 'negligence' count, Thanas asserts, without limitation, theories of liability for failure to investigate, failure to instruct, failure to warn, and negligent retention.  These are separate causes of action that must be asserted independently and with supporting factual allegations.") (citing *Garcia v. Carnival Corp.*, 838 F. Supp. 2d 1334, 1337, n.2 (S.D. Fla. 2012) (dismissing maritime negligence claim that "epitomizes a form of 'shotgun' pleading," where the plaintiff alleged that Defendant owed a duty of "reasonable care under the circumstances," and then "proceed[ed] to allege at least twenty-one ways in which Defendant breached this duty"); *Brown v. Carnival Corp.*, 202 F. Supp. 3d 1332, 1338 (S.D. Fla. 2016) ("Simply alleging that Carnival owed Plaintiff a duty of 'reasonable care' in a conclusory fashion, while also pleading ["forty-one"] alleged breaches that purport to impose a heightened duty upon Carnival, is not sufficient to state a valid negligence claim under maritime law," and holding that "the burden

will remain on Plaintiff to review her Complaint and ensure that each factual allegation is supported by law and plausible facts, and is alleged in good faith."); *Gayou v. Celebrity Cruises, Inc.*, 2012 WL 2049431, at *5-6, n.2 (S.D. Fla. June 5, 2012) (ordering a plaintiff to amend a complaint to "separately allege an independent count" for various theories of liability that were lumped into a single maritime negligence claim); *Flaherty v. Royal Caribbean Cruises, Ltd.*, 2015 WL 8227674, *3 n.3 (S.D. Fla. Dec. 7, 2015)).

### C.   *Negligent Failure to Warn (Count 2)*

Plaintiff alleges in count two that Carnival was negligent for failing to warn her of the dangers associated with the ATV excursion.  Under federal maritime law, a plaintiff claiming negligence must allege facts showing that "(1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm."  *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012) (citing *Zivojinovich v. Barrier*, 525 F.3d 1059, 1067 (11th Cir. 2008)).  These elements mean that a cruise line only owes a duty of ordinary reasonable care under the circumstances, and that "as a prerequisite to imposing liability, that the carrier have actual or constructive notice of the risk-creating condition."  *Keefe, Inc.*, 867 F.2d at 1322.

In the shore excursion context, the care owed to passengers by common carriers includes a duty to warn of "known dangers" existing "beyond the point of debarkation in places where passengers are invited or reasonably expected to visit."

*Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 632 (1959); *Chaparro*, 693 F.3d at 1336. This requires "actual or constructive notice of the risk-creating condition" and the duty of care encompasses only "those dangers which are not apparent and obvious to the passenger." *Smolnikar v. Royal Caribbean Cruises Ltd.*, 787 F. Supp. 2d 1308, 1322-23 (S.D. Fla. 2011) (citing *Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1237 (S.D. Fla. 2006)).

Carnival argues that count two should be dismissed because Plaintiff failed to allege any facts that it had notice of a dangerous condition. Plaintiff claims that Carnival is mistaken because she can point to at least two paragraphs that allege how Carnival was on notice of the dangerous excursion:

> 67. Defendant CARNIVAL created the foregoing conditions causing Plaintiff's accident. Alternatively, Defendant CARNIVAL knew of the foregoing conditions causing Plaintiff's accident and did not correct them, or the conditions existed for a sufficient length of time so that Defendants, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them.
>
> 68. The conditions created and/or known to Defendant CARNIVAL occurred with sufficient regularity so as to be reasonably foreseeable to Defendant CARNIVAL.

[D.E. 1 at ¶¶ 67-68].

But, Plaintiff's reliance on these paragraphs is inadequate because they are hopelessly conclusory. The rest of the complaint is no better because in searching for any other use of the word "notice", every other allegation consists of nothing more than a single sentence. [D.E. 1 at ¶ 53 ("In fact, despite Defendant CARNIVAL's representations of safety to the Plaintiff, at all times material, upon information and belief, Defendant CARNIVAL was on notice of the hazardous

conditions on the excursion."); *id*. at ¶ 58 ("Upon information and belief, Defendant CARNIVAL and Defendant TURISMO were on notice of prior incidents during the subject ATV Tour where cruise line passengers have injured themselves."); *id*. at ¶ 94 ("Under the circumstances of Defendant TURISMO being well aware, and on notice, of the true and actual dangers of the ATV Tour as that sold to Plaintiff as a result of prior serious injuries, claims, and/or lawsuits from the very same ATV Tour")].

In fact, there are no details on when or how Carnival had notice as the complaint is bereft of any other factual allegations for this essential element.  *See, e.g., Polanco v. Carnival Corp.*, 2010 WL 11575228, at *3 (S.D. Fla. Aug. 11, 2010) ("The problem for the plaintiffs is that these meager allegations are wholly conclusory.  There are no details about how long Carnival knew of the negligent operation of the motor vehicle on the excursion, or how it was that Carnival knew or should have known about such negligent operation.").  Because these factual allegations are "a prerequisite to imposing liability" and Plaintiff fails to allege any facts that Carnival knew or should have known of a dangerous condition, Defendant's motion to dismiss count two should be **GRANTED without prejudice**.  *Gayou,* 2012 WL 2049431 at *5; *see also Harding v. NCL (Bahamas) Ltd.*, 90 F. Supp. 3d 1305, 1307-08 (S.D. Fla. 2015) ("[L]ike the plaintiff in *Gayou,* [the plaintiff] does not allege a single fact from which it can be inferred that NCL knew or should have known of the dangerous conditions contributing to

her fall.  How did NCL know, or why should it have known, of those conditions?  For how long was NCL on notice?").

### D.    *Negligent Misrepresentation (Count 3)*

Next, Plaintiff alleges in count three that Carnival made and disseminated false or misleading materials regarding the safety of the shore excursion.  Claims arising under a theory of negligent misrepresentation must allege the following:

> (1) misrepresentation of a material fact; (2) that the representor made the misrepresentation without knowledge as to its truth or falsity or under circumstances in which he ought to have known its falsity; (3) that the representor intended that the misrepresentation induce another to act on it; and (4) that injury resulted to the party acting in justifiable reliance on the misrepresentation.

*Ceithaml v. Celebrity Cruises, Inc.*, 207 F. Supp. 3d 1345, 1352-3 (S.D. Fla. 2016) (citing *Holguin v. Celebrity Cruises, Inc.*, 2010 WL 1837808, at *1 (S.D. Fla. May 4, 2010)).

Negligent misrepresentation, as an subset of fraud, is subject to the heightened pleading standard of Rule 9(b) and requires a plaintiff to establish "the 'who, what, when, where, and how' of the fraud."  *Ceithaml*, 207 F. Supp. 3d at 1353 (citing *Garfield v. NDC Health Corp.*, 466 F. 3d 1255, 1262 (11th Cir. 2006)); *see also Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) ("Rule 9(b)'s heightened pleading standard requires that the complaint set forth . . . precisely what statements were made in what documents or oral representations."); *see also Gayou*, 2012 WL 2049431, at *7 (dismissing an allegation of misleading advertisement and negligent misrepresentation because the complaint was not temporally precise).  In other words, when pleading a fraud claim, a cause of action

must allege "(1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff, and; (4) what the defendant obtained as a consequence of the fraud." *In re Galectin Therapeutics, Inc. Sec. Litig.*, 843 F.3d 1257, 1269 (11th Cir. 2016) (citing *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006)).[3]

Carnival argues that count three should be dismissed because Plaintiff "does not specify when he viewed Carnival's website, how many times, or which materials he looked at each time he visited." [D.E. 10 at 11]. Although Carnival's argument is not entirely persuasive – as we have not found a case that imposes some of the heightened requirements that Carnival advocates – we do agree that Plaintiff failed to allege when he viewed the misleading materials. Plaintiff claims that she viewed these misleading items prior to her cruise with a reference to paragraph fifteen of her complaint. But, paragraph fifteen does not even make that allegation. And even if it did, Plaintiff must be more specific with respect to the time and place for

---

[3]    Courts have applied Rule 9(b) to a wide-range of fraud claims, whether the allegations stem from fraudulent concealment, common law fraud, or a variation thereof. *See, e.g.*, *Hendley v. Am. Nat'l Fire Ins. Co.*, 842 F.2d 267, 269 (11th Cir. 1988) (concluding that Rule 9(b) was not satisfied when plaintiff "steadfastly refused to offer specifics" and "never earmarked any facts as demonstrative of fraud"); *Friedlander v. Nims*, 755 F.2d 810, 813–14 (11th Cir. 1985) (concluding that although a Rule 9(b) dismissal is a "severe sanction," plaintiff's decision to ignore the court's "sound and proper" recommendations about how to correct the pleading deficiencies concerning the scope of an employee's authority warranted dismissal); *Summer v. Land & Leisure, Inc.*, 664 F.2d 965, 970–71 (5th Cir. 1981) (affirming Rule 9(b) dismissal because "the complaint includes only conclusory allegations of fraudulent concealment").

each misleading statement.  A generic reference that she viewed the misleading materials prior to embarking on a cruise hardly suffices.  As such, Carnival's motion to dismiss count three should be **GRANTED without prejudice** so that Plaintiff can include the required allegations to state a claim that fully complies with Rule 9(b)'s heightened pleading requirements.

### E.   *Apparent Agency and Agency by Estoppel (Count 7)*

Plaintiff alleges in count seven that Carnival is vicariously liable for the negligence conduct of the tour operator under a theory of apparent agency or agency by estoppel.  "[A]pparent agency liability requires finding three essential elements: first, a representation by the principal to the plaintiff, which, second, causes the plaintiff reasonably to believe that the alleged agent is authorized to act for the principal's benefit, and which, third, induces the plaintiff's detrimental, justifiable reliance upon the appearance of agency." *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1252 (11th Cir. 2014) (citing *Borg-Warner Leasing, a Div. of Borg-Warner Acceptance Corp. v. Doyle Elec. Co.*, 733 F.2d 833, 836 (11th Cir. 1984) (applying Florida law)).

Apparent agency is so similar to agency by estoppel that, when interpreting Florida law, the Eleventh Circuit does not even consider the two separately.  *See Whetstone Candy Co. v. Kraft Foods, Inc.*, 351 F.3d 1067, 1078 n.15 (11th Cir. 2003) ("Whetstone also argues that the doctrine of agency by estoppel applies.  That doctrine, however, is so similar to apparent authority that there is no significant difference between them, we do not consider agency by estoppel separately")

(internal citation and quotation marks omitted).   That is, "[u]nder Florida law, agency by estoppel . . . embraces the primary elements of a representation by the principal, reliance on the representation by the claimant, and a change of position by the claimant in reliance on the representation." *United Bonding Ins. Co. v. Banco Suizo–Panameno, S.A.,* 422 F.2d 1142, 1146 (5th Cir. 1970) (citations omitted).

There is no need to give any substantive consideration to count seven because Plaintiff's negligence claim in count one needs to be amended so that it can survive a motion to dismiss.   That is, without a viable negligence claim, a theory of liability based on an agency relationship cannot survive for the same reasons.   *See Ceithaml v. Celebrity Cruises, Inc.*, 207 F. Supp. 3d 1345, 1355–56 (S.D. Fla. 2016) ("At the outset, the Court finds that because Ceithaml failed to state a plausible negligence claim, her 'apparent agency' claim also fails.") (citing *Brown*, 202 F.Supp.3d at 1340, 2016 WL 4613385, at *4 (dismissing "apparent agency" claim where court had already found that plaintiff failed to state a plausible negligence claim); *Zapata v. Royal Caribbean Cruises, Ltd.*, 2013 WL 1296298, at *5 (S.D. Fla. Mar. 27, 2013) ("I already have determined that the insufficiency of Plaintiff's factual allegations warranted the dismissal without prejudice of Plaintiff's negligence claim. Accordingly, Plaintiff's apparent agency claim must be dismissed without prejudice as well.")).   Carnival's motion to dismiss count seven should therefore be **GRANTED without prejudice**.

### F.    *Joint Venture (Count 8)*

Plaintiff alleges in count eight that Carnival is vicariously liable for the negligence of the excursion operator because the two entities were engaged in a joint venture.   Although there is technically no cause of action for joint venture, Plaintiff's claim should be construed as an alternative theory for negligence liability.  *See Ash v. Royal Caribbean Cruises Ltd.*, 2014 WL 6682514, at *8 (S.D. Fla. Nov. 25, 2014) ("There is no cause of action for 'Joint Venture,' but, as with Count III, it is clear from review of the substance of the count that Plaintiffs' Count IV simply advances another alternative theory for *negligence* liability").   A joint venture theory of negligence liability requires a plaintiff to plead facts showing: "(1) a community of interest in the performance of a common purpose; (2) joint control or right of control; (3) a joint proprietary interest in the subject matter of the venture; (4) a right to share in profits; and (5) a duty to share in any losses which may be sustained." *Lapidus v. NCL Am. LLC*, 2012 WL 2193055, at *6 (S.D. Fla. June 14, 2012) (citing *Browning v. Peyton,* 918 F.2d 1516, 1520 (11th Cir. 1990)). Importantly, these elements are treated as "only signposts, likely indicia, but not prerequisites" to stating a claim. *Fulcher's Point Pride Seafood, Inc. v. M/V Theodora Maria,* 935 F.2d 208, 211 (11th Cir. 1991)).

Carnival argues that count eight should be dismissed because, although the complaint recites the elements of a joint venture claim, it fails to include any supporting facts.   Carnival also references an independent contractor agreement

between the cruise line and the shore operator because it states that the relationship between the parties was *not* a joint venture:

> 11. *Relationship of the Parties*: *Operator's relationship with Carnival during the term of this agreement shall be that of Independent Contractor*. Operator shall not have, and shall not represent that it has, any power, right or authority to bind Carnival or to assume or create any obligation or responsibility, express or implied, on behalf of Carnival or in Carnival's name. *Nothing related in this agreement shall be construed as constituting Operator and Carnival as* partners, or as treating the relationship of employer and employee, franchisor and franchisee, master and servant or principal and agent or *joint venturers* between the parties hereto. Operator shall not represent, communicate or imply in any advertising, literature, announcement or by any other means that it is anything other than an Independent Contractor.

[D.E. 10-3 at ¶ 11] (emphasis in original).   Because this agreement further undermines Plaintiff's allegations that Carnival and the excursion operator worked as a joint venture, Carnival concludes that count eight should be dismissed.

It is undisputed that the independent contractor agreement states that Carnival and the excursion operator did not agree in writing to operate as a joint venture.   Carnival reasons that this should be the end of the inquiry and that count eight should be dismissed.   But, a court's review at the motion to dismiss stage is generally limited to the four corners of the complaint with the only exception occurring when: (1) a plaintiff refers to a document in the complaint; (2) the document is central to its claim; (3) the document's contents are not in dispute; and (4) the defendant attached the document to its motion to dismiss.   *See Fin. Sec. Assurance, Inc. v. Stephens, Inc.,* 500 F.3d 1276, 1284 (11th Cir. 2007) (internal citation omitted).

Here, the independent contractor agreement does *not* meet this exception because the FAC never makes reference to an independent contractor agreement. The pleading only states that Carnival and the excursion operator "entered into an agreement and/or agreements whereby Defendant [Carnival] would advertise, market, and sell the subject ATV tour to its passengers, including Plaintiff and Defendant [Turismo], would operate the subject ATV Tour."  [D.E. 1 at ¶ 104]. Whether this "agreement" is the same as the independent contractor agreement remains to be seen and we have no basis to make that conclusion on a motion to dismiss because a joint venture, similar to a partnership, can be created by express or implied contract.  *See Williams v. Obstfeld,* 314 F.3d 1270, 1275–76 (11th Cir. 2002).

Carnival's next argument – that the complaint lacks sufficient factual allegations – is equally unavailing because Plaintiff included lengthy allegations on how the two entities entered into an agreement, shared joint control over the day-to-day workings of the excursion, shared a common purpose/interest in sponsoring and selling the excursion to customers, and shared in the profits/losses.  Carnival complains the allegations are insufficient, but Carnival never states what more Plaintiff should have alleged.  And it is equally clear that the elements of a joint venture claim do not "form a conjunctive test in which every element must be met," *Cook v. Carnival Corp.*, 2014 WL 11906602, at *3 (S.D. Fla. Mar. 3, 2014) because the factors are merely "signposts, likely indicia, but not prerequisites," establishing that a plaintiff has plausibly stated a joint venture claim.  *Fulcher's Point Pride*

*Seafood, Inc. V. M/V Theodora Maria*, 935 F.2d 208, 211 (11th Cir. 1991).   Of course, in this case, Plaintiff has alleged each of these elements and there is nothing more that is required to survive a motion to dismiss.   Thus, Carnival's motion to dismiss count eight should be **DENIED**.

### G.     *Third-Party Beneficiary (Count 9)*

Count nine asserts a claim for breach of contract premised on Plaintiff being a third-party beneficiary to a contract between Carnival and the excursion operator. The doctrine of third-party beneficiaries provides that, under certain circumstances, a person may sue to enforce a contract, even though that person is not a party to the contract.  *See* 11 Fla. Jur.2d Contracts § 206, at 406–07 (2008).  "To establish an action for breach of a third party beneficiary contract, [the third party beneficiary] must allege and prove the following four elements: '(1) existence of a contract; (2) the clear or manifest intent of the contracting parties that the contract primarily and directly benefit the third party; (3) breach of the contract by a contracting party; and (4) damages to the third party resulting from the breach.'"  *Mendez v. Hampton Court Nursing Ctr., LLC*, 203 So. 3d 146, 148 (Fla. 2016) (citation omitted).  Under Florida law, a non-party to a contract may *not* sue for breach of that contract unless the party was an intended third-party beneficiary of such contract.  *See Metropolitan Life Ins. Co. v. McCarson*, 467 So. 2d 277 (Fla. 1985); *Biscayne Inv. Grp., Ltd. v. Guarantee Mgmt. Servs., Inc.*, 903 So. 2d 251, 254 (Fla. 3d DCA 2005).

Plaintiff argues that count nine should stand because it includes well-pled allegations that meet each of the elements listed above.  However, in reviewing count nine, Plaintiff never alleges that the contract between Carnival and the excursion operator existed to benefit her specifically.  She only claims that "[t]he contract between Defendant [Carnival] and Defendant [Turismo] manifest[ed] the specific and express intent of the contracting parties that the contract primarily and directly benefit Defendant [Carnival's] passengers, including Plaintiff[.]"  [D.E. 13 at ¶ 119].

The problem with this allegation is that "[a] party is an intended beneficiary only if the parties to the contract clearly express, or the contract itself expresses, an intent to primarily and directly benefit the third party or a class of persons to which that party claims to belong." *Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd.*, 647 So. 2d 1028, 1031 (Fla. 4th DCA1994).  This means that "[f]or a third party to have a legally enforceable right under the contract, the benefit to the third party must be the 'direct and primary object of the contracting parties.'" *Aronson v. Celebrity Cruises, Inc.*, 30 F. Supp. 3d 1379, 1398 (S.D. Fla. 2014) (quoting *Bochese v. Town of Ponce Inlet,* 405 F.3d 964, 982 (11th Cir. 2005)).  To be sure, third parties do not need to be specifically named in the contract to qualify as intended beneficiaries, as "long as the contract refers to a well-defined class of readily identifiable persons that it intends to benefit." *Belik v. Carlson Travel Group, Inc.,* 864 F.Supp.2d 1302, 1312 (S.D. Fla. 2011) (internal citations omitted).  But, the parties' intent to benefit the third party "must be specific and must be clearly

expressed in the contract in order to endow the third party beneficiary with a legally enforceable right," because an "incidental or consequential benefit" to a third party is insufficient to sustain a claim. *Bochese,* 405 F.3d at 982. And in determining whether a plaintiff meets this requirement, courts in our district have repeatedly found that allegations attempting to cover all cruise line passengers "is far too generalized to support a third-party beneficiary claim." *Aronson v. Celebrity Cruises, Inc.*, 30 F. Supp. 3d 1379, 1398 (S.D. Fla. 2014) (citing cases); *see also Serra-Cruz v. Carnival Corp*., 400 F. Supp. 3d 1364, 1373 (S.D. Fla. 2019) (same).

Take, for instance, Judge Seitz's decision in *Lapidus v. NCL Am. LLC*, 924 F. Supp. 2d 1352 (S.D. Fla. 2013). There, the plaintiff alleged that "[t]he contract between the parties clearly manifested the intent of the contracting parties that the contract primarily and directly benefits the [p]laintiff third party by requiring the Excursion Entities to maintain insurance and/or exercise reasonable care in the operation of the subject excursion." *Id*. (quotation marks and citation omitted). The court found that the allegations were inadequate and dismissed the third-party beneficiary claim because – even when accepted as true – it failed to "demonstrate that the contract was intended to primarily and directly benefit the Plaintiff." *Id*.; *see also See Gayou,* 2012 WL 2049431, at *11 (dismissing third party beneficiary claim where contract stated only that the excursion "will satisfy the highest standards in the industry"); *Gentry v. Carnival Corp.,*2011 WL 4737062, at *8 (passenger's only remedy is in negligence unless passenger's contract of carriage guarantees safe passage) (collecting cases).

The same reasoning applies here because Plaintiff alleges that Carnival and the shore operator intended to benefit all of Carnival's passengers.  But, without any other facts to support such a generic allegation, count nine is conclusory and fails to plead enough factual allegations sufficient "to raise a right to relief above the speculative level[.]"  *Twombly,* 550 U.S. at 545; *see also Finkelstein v. Carnival Corp.*, 2015 WL 12765434, at *4 (S.D. Fla. Jan. 20, 2015) (finding no third-party beneficiary claim because contract's requirement that excursion operators exercise reasonable care "fail[ed] to satisfy the pleading requirements because they do not clearly and specifically express Defendants' intent to primarily and directly benefit Plaintiffs").  Plaintiff also failed to attach to her complaint the underlying contract. If she had done so and the contract expressly included her an intended beneficiary then her claim might have survived.  Of course, it is still possible for Plaintiff to correct this deficiency in an amended complaint and, for that reason, Carnival's motion to dismiss count nine should be **GRANTED without prejudice**.

## IV. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Carnival's motion to dismiss [D.E. 16] be **GRANTED in part** and **DENIED in part**:

A.    Carnival's motion to dismiss count eight should be **DENIED**.

B.    In all other respects, Carnival's motion to dismiss should be **GRANTED without prejudice**.

C.    Any amended complaint should be filed within fourteen (14) days from the date the District Judge adopts this Report and Recommendation.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 11th day of September, 2020.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge